UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FELIPE H.,                        )   Case No.  2:20-cv-10395-SP
                                  )
              Plaintiff,          )
                                  )
       v.                         )   MEMORANDUM OPINION AND
                                  )   ORDER
KILOLO KIJAKAZI, Acting           )
Commissioner of Social Security   )
Administration,                   )
                                  )
              Defendant.          )
                                  )

## I.

## <u>INTRODUCTION</u>

On November 12, 2020, plaintiff Felipe H. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four issues for decision: (1) whether the Administrative Law Judge ("ALJ") improperly discounted plaintiff's symptom testimony, (2)

1

whether the ALJ properly considered third party lay testimony, (3) whether the ALJ erred in his residual functional capacity ("RFC") determination, and (4) whether the ALJ erred in relying the vocational expert's testimony regarding an allegedly incomplete hypothetical.  Plaintiff's Motion in Support of Plaintiff's Complaint ("P. Mem.") at 27-37; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted plaintiff's testimony, any error in discounting the third party testimony was harmless, the ALJ's RFC determination was supported by substantial evidence, and the ALJ properly relied on the vocational expert's testimony at step five.  Consequently, the court affirms the decision of the Commissioner denying benefits.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 25 years old on the alleged disability onset date.  AR at 74, 88. He has a ninth grade education and past relevant work as a janitor.  AR at 42-43, 64.

On July 23, 2017, plaintiff filed applications for a period of disability and DIB, and for SSI, alleging an onset date of January 28, 2015.  AR at 74-75, 88-89. Plaintiff claimed he suffered from severe depression, anxiety, social isolation, social phobia and paranoia, paranoid schizophrenia and distrust of people, inability to deal with stress, fatigue, insomnia, impaired memory and concentration, and suicidal ideation.  AR at 75, 89.  Plaintiff's applications were denied initially and upon reconsideration.  AR at 106.

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on November 12, 2019.  AR at 41-62.  The ALJ also heard testimony from

Rebecca Kendrick, a vocational expert.  AR at 62-70.  The ALJ denied plaintiff's claims for benefits on December 3, 2019.  AR at 15-29.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  AR at 17.

At step two, the ALJ found plaintiff suffered from the following severe impairments: schizophrenia, depression, anxiety, and cannabis use disorder in remission.  AR at 18.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 18.

The ALJ then assessed plaintiff's RFC,[1] and determined he had the ability to perform a full range of work at all exertional levels, but with nonexertional limitations:

> [Plaintiff] can perform tasks of nature that can be learned within a
> short demonstration period of approximately 30 days, with no more
> than frequent changes to the daily workplace tasks and duties.  He can
> work primarily with things, rather than with people, such that the
> workplace contact with others is only on an occasional basis.  He can
> maintain concentration, pace, and persistence, for two hours at a time
> before taking regularly scheduled breaks, and returning to work
> throughout the workday.

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1  AR at 20-21.

2      At step four, the ALJ determined plaintiff is unable to perform his past

3  relevant work as a janitor.  AR at 26.

4      At step five, considering plaintiff's age, education, work experience, and

5  RFC, the ALJ found there are jobs that exist in significant numbers in the national

6  economy that plaintiff can perform, including cleaner II, industrial cleaner, and

7  housekeeper/laundry aide.  AR at 28.  The ALJ accordingly concluded plaintiff

8  was not under a disability, as defined in the Social Security Act.  AR at 29.

9      Plaintiff filed a timely request for review of the ALJ's decision, which the

10  Appeals Council denied.  AR at 1-3.  Accordingly, the ALJ's decision stands as the

11  final decision of the Commissioner.

12                              **III.**

13                    **STANDARD OF REVIEW**

14      This court is empowered to review decisions by the Commissioner to deny

15  benefits.  42 U.S.C. § 405(g).  The findings and decision of the SSA must be

16  upheld if they are free of legal error and supported by substantial evidence.  *Mayes*

17  *v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court

18  determines the ALJ's findings are based on legal error or are not supported by

19  substantial evidence in the record, the court may reject the findings and set aside

20  the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th

21  Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

22      "Substantial evidence is more than a mere scintilla, but less than a

23  preponderance."  *Aukland*, 257 F.3d at 1035 (citation omitted).  Substantial

24  evidence is such "relevant evidence which a reasonable person might accept as

25  adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

26  1998) (citations omitted); *Mayes*, 276 F.3d at 459.  To determine whether

27  substantial evidence supports the ALJ's finding, the reviewing court must review

28

                                      4

the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.

## **DISCUSSION**

### A.   **The ALJ Properly Considered Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting his symptom testimony. P. Mem. at 27-32. Specifically, plaintiff argues that in discounting his testimony, the ALJ improperly used boilerplate language, selectively parsed the evidence supporting the RFC determination, and improperly used evidence of plaintiff's daily activities. *Id.*

#### 1.   **Legal Standard**

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)). In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to

5

1  delve into wide-ranging scrutiny of the claimant's character and

2  apparent truthfulness.

3  *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

4      To evaluate a claimant's symptom testimony, the ALJ engages in "'a two-

5  step analysis.'"  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019)

6  (quoting *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the

7  claimant produced objective medical evidence of an underlying impairment that

8  could reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if the

9  claimant satisfies the first step, and there is no evidence of malingering, the ALJ

10  must evaluate the intensity and persistence of the claimant's symptoms and

11  determine the extent to which they limit his ability to perform work-related

12  activities.  *Id.* (citing SSR 16-3p).

13      In assessing intensity and persistence, the ALJ may consider: a claimant's

14  daily activities; the location, duration, frequency, and intensity of the symptoms;

15  precipitating and aggravating factors; the type, dosage, effectiveness, and side

16  effects of medication taken to alleviate the symptoms; other treatment received;

17  other measures used to relieve the symptoms; and other factors concerning the

18  claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing

19  20 C.F.R. § 416.929; SSR 16-3p; *Smolen v. Chater*, 80 F.3d, 1273, 1283-84 & n.8

20  (9th Cir. 1996)).  To reject the claimant's subjective symptom statements at step

21  two, the ALJ must provide "specific, clear, and convincing" reasons, supported by

22  substantial evidence in the record, for doing so.  *Smolen*, 80 F.3d at 1283-84.

23      **2.    Plaintiff's Subjective Symptom Testimony**

24      The ALJ summarized plaintiff's testimony as follows.  At the hearing,

25  plaintiff testified he experiences paranoia and difficulty in interacting with others,

26  causing him to isolate.  AR at 21, 199, 243, 268.  He reported that his

27  comprehension, concentration, and memory were impaired, and that he listens to

28

music as a distraction from his symptoms.  AR at 21, 199, 268.  He testified that his symptoms are intermittent and that medication adjustments helped with paranoia and auditory hallucinations.  AR at 21, 50-52.

In his memorandum, plaintiff highlighted additional parts of his hearing testimony.  He testified his mother drove him to the hearing because he was nervous.  AR at 42.  He has a ninth grade education, and although he attempted to go back for a GED, he was prevented from doing so by the number of people on the room.  AR at 42-43.  He last worked in janitorial services in 2015 and was a supervisor for about eight or nine months, but the pressure and interactions with people caused him to stop.  AR at 43-44.

Plaintiff testified he lives with his mother and siblings, but stays in his room during the day.  AR at 45-46.  He indicated he tries to help quickly with chores like cleaning and doing dishes.  AR at 46.  He stated his anxiety and depression hold him back from doing things, and his anxiety is triggered by public and small, confined places with a lot of people.  AR at 49-50.  He was taking medication for paranoia, schizophrenia, and anxiety.  AR at 51.  When he was in public, he thought other people were talking about him, including the neighbors.  *Id*.  He stated he puts on his music or the radio and stays in his room to handle his thoughts.  AR at 52, 57.  He tried alcohol and marijuana for his issues, then tried going to church, but became uncomfortable as he thought people were staring.  AR at 53-54.

Plaintiff stated he washes the dishes when no one is around. AR at 55.  Even at home, he was bothered by people in the house.  *Id.*  He stated his anxiety and stress increases paranoia, although medications helped in part.  AR at 55-56.  He did not engage in social activities with his siblings and going out in public made him anxious and nervous.  AR at 58, 60.  He testified that his father would take over his job at the janitorial company two to three times per week when he did not

understand what the supervisor was saying.  AR at 60, 61.

### 3.   ALJ's Findings

At the first step for evaluating a claimant's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 21.  At the second step, the ALJ found plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the medical evidence and other evidence in the record.  *Id.*  Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence.

Plaintiff first argues that the ALJ's boilerplate language was insufficient to discredit his testimony, and that "the ALJ must identify which testimony is not credible and what evidence undermines the claimant's complaints.  P. Mem. at 28-29.  In discounting plaintiff's testimony the ALJ first summarized the testimony and then reviewed in fair detail the evidence he found inconsistent with that testimony.  AR at 21-25.  While the ALJ's analysis could have been more explicit in some respects, the court finds that on balance the ALJ's juxtaposition of plaintiff's testimony with the inconsistent medical and other evidence in the record is sufficiently clear for the court to evaluate.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not required to "perform a line-by-line exegesis of the claimant's testimony, nor do [the regulations] require ALJs to draft dissertations when denying benefits" (citation omitted)).

The ALJ gave three main reasons for discounting plaintiff's symptom testimony: (1) he exhibited a positive response to treatment; (2) his allegations were inconsistent with his activities of daily living; (3) his testimony was not entirely consistent with the medical evidence in the record.  AR at 21-25.

### a. <u>Positive Response to Treatment</u>

The first reason the ALJ articulated for discounting plaintiff's symptom testimony was his positive response to treatment, including medication management.  AR at 21-24; *see Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)  ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

The ALJ noted that while plaintiff alleged the onset of his disability in January 2015, there were no records of treatment at that time.  AR at 22.  The record showed plaintiff first received treatment for depression with feelings of paranoia after having suicidal thoughts in late 2011.  AR at 273.  He participated intermittently in follow-up care for schizophrenia, substance-induced psychotic disorder, and cannabis dependence in early partial remission.  AR at 22 (citing AR at 291, 313, 316, 363).  Treatment records showed plaintiff felt better on medication, and that his delusions, hallucinations, and mood were controlled.  AR at 295-96, 298, 312, 318.  But plaintiff stopped treatment around 2013 and did not resume until 2017, when he experienced increased paranoia after having stopped taking his medication years earlier.  AR at 22, 318, 354, 359. 423, 427-28.  In 2017, plaintiff was reportedly anxious appearing with some paranoia and exhibited poor eye contact.  AR at 350.  Although his thought processes were mostly linear and logical, he denied having hallucinations or ideation, and showed fair judgment and insight.  AR at  421.  When plaintiff restarted his medications in May 2017, he reported less stress, better sleep, and lack of side effects.  AR at 22, 348, 418.  Compared to prior visits, he appeared less anxious and less easily distracted.  AR at 348, 418.  He was reportedly fully oriented with normal speech, linear and logical thoughts, no hallucinations or ideation, and still showed fair judgment and insight.  AR at 346, 348, 416-18.  Records indicate continued improvement with treatment throughout the rest of 2017.  AR at 22, 383-431.  For instance, medical records

show plaintiff was stable, without signs of psychosis, and he reported feeling better, more active, and still without ideation.  AR at 408-10.

Records from throughout 2018 show stable functioning and positive response to treatment.  AR at 23, 390-406.  Plaintiff was cooperative with treatment, able to help his mother, denied having ideation, and noted no significant complaints or abnormalities.  AR at 395, 402-06.  Despite some evidence of being somewhat withdrawn, irritable, and having decreased concentration at times, plaintiff was "doing well" on his medications.  AR at 397-99.  Plaintiff also kept busy doing chores for his mother, reported being stable over the past several months, and denied ideation.  AR at 395.

Records from July 2019 document plaintiff denied hearing voices but was observed talking to himself throughout the visit, which prompted an adjustment in his medication.  AR at 23, 385.  After the medication adjustment, plaintiff felt more relaxed and was sleeping better, denying any mania, panic attacks, ideation, or symptoms of obsession or compulsion, and attended appointments on his own.  AR at 23, 374, 433.  He had been overall stable on medication in the preceding several years, responded positively to medication adjustments, and was not experiencing hallucinations.  AR at 23-24, 432-33, 435.  Additionally, at the hearing, plaintiff testified his symptoms were intermittent and that since medication adjustments, he no longer experienced significant paranoia or auditory hallucinations.  AR at 50-52.

Although records from 2019 show plaintiff had ongoing complaints regarding his mental health, he exhibited a positive responses to treatment and a level of stability appropriate for outpatient care.  AR at 23 (citing AR at 381, 384, 436).  The court will not second-guess the ALJ's determination here that, taking all of the objective medical evidence into account, plaintiff's overall mental condition and improvements with medication contradicted his claims of incapacity.  *See*

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

Accordingly, the court finds the evidence of plaintiff's positive response to treatment was a clear and convincing reason to discount his testimony. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were controlled was clear and convincing reason to reject plaintiff's testimony).

### b.    <u>Inconsistencies With Activities of Daily Living</u>

The ALJ next found that plaintiff's allegations of debilitation were inconsistent with his activities of daily living.  AR at 22-25; *see Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (a plaintiff's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him).  But plaintiff does not need to be "utterly incapacitated," and "the mere fact a [plaintiff] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, plaintiff's allegations of disability concern limitations caused by his anxiety, paranoia, schizophrenia, and depression.  AR at 75, 79-80.  He has difficulty staying focused, interacting with others, and being in public. *Id*. Plaintiff argues that he need not be "utterly incapacitated" to be disabled.  P. Mem. at 31 (citing *Fair*, 885 F.2d at 603).  But engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *See, e.g.*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ generally identified plaintiff's daily activities that would be transferrable to the work environment.  "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."  *Burch*, 400 F.3d at 681 (citations omitted).  The ALJ specifically reasoned that plaintiff's purported "difficulty interacting with others and reports that he prefers to isolate himself" (AR at 207) were inconsistent with him living with family members without reported conflict, being able to drive himself to appointments that he attended alone, and his ability to run errands in public.  AR at 24, 366.  Plaintiff's alleged difficulties with comprehension and sustained focus contradicted his admission of playing card games online for up to two hours at a time, as well as completing crossword puzzles.  AR at 47-48, 57-58.  He was also able to do laundry, prepare food, drive, and help his mother with chores around the house.  AR at 46, 366, 395.  Accordingly, the inconsistency between plaintiff's activities and his claimed symptoms was another clear and convincing reason for discounting plaintiff's testimony.

### c.   Inconsistencies With Medical Evidence

The third reason the ALJ gave for discounting plaintiff's symptom testimony that his mental impairments cause him to be disabled was that his allegations of debilitating symptoms are inconsistent with medical evidence in the record.  AR at 21.  Some of these noted inconsistencies were discussed above with respect to plaintiff's positive response to treatment.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In addition to reviewing the medical evidence, the ALJ identified specific

medical findings suggesting plaintiff's limitations were less restrictive than he alleged.  For example, State agency medical expert Anna Franco, Psy. D. found on October 26, 2017 that plaintiff had the ability to perform simple, repetitive work without public contact, could sustain concentration, persistence, and pace in a usual work setting with customary breaks, and could adapt accordingly.  AR at 84. Though this medical opinion is inconsistent with plaintiff's testimony, the ALJ found it consistent with other medical evidence that documents issues with perception, mood, and anxiety, but shows plaintiff largely presented as alert and cooperative with grossly intact thought processes, adequate focus and memory, denied ideation, and was typically free of active hallucinations.  AR at 25 (citing AR at 346, 348, 350, 354-56, 373, 385, 388, 395, 404, 408, 410, 416-18, 420-21, 433-36).  The ALJ also found Dr. Franco's opinion consistent with plaintiff's activities of daily living.  AR at 25 (citing AR at 47-48, 366).

The ALJ also considered the opinion of Dr. Bridges, a State agency consultative examiner, although found her opinion less persuasive than Dr. Franco's.  AR at 25-26.  Dr. Bridges performed a psychiatric examination of plaintiff on October 5, 2017.  AR at 363-369.  Plaintiff appeared tired or sedated with decreased focus, but there was nothing unusual documented about his posture, bearing, or hygiene, and he did not appear to be responding to internal stimuli.  AR at 366.  He demonstrated grossly intact functioning and stated his medications helped with his symptoms and sleep.  AR at 365-68.  Plaintiff showed no difficulty interacting with clinic staff or the examining doctor, or with staying composed or maintaining his temperament, and appeared intellectually and psychologically able to perform his activities of daily living.  AR at 366.

Accordingly, the ALJ's reasons for discounting plaintiff's symptom testimony – positive response to treatment, inconsistencies with his activities of daily living, and inconsistencies with the medical evidence – were clear and

1    convincing.

2    **B.    Any Error in Discounting Lay Witness Testimony Was Harmless**

3         Plaintiff argues the ALJ improperly rejected the Third-Party Function Report

4    provided by plaintiff's sister, Areli Hernandez.  P. Mem. at 33-34; *see* AR at

5    219-25.

6         "[L]ay testimony as to a claimant's symptoms or how an impairment affects

7    ability to work is competent evidence and therefore cannot be disregarded without

8    comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

9    quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see*

10   *also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner will consider

11   evidence from "non-medical sources," including "spouses, parents and other

12   caregivers, siblings, other relatives, friends, neighbors, and clergy," in determining

13   how a claimant's impairments affect his or her ability to work); 20 C.F.R.

14   § 416.913(d)(4) (same).  The ALJ may only discount the testimony of lay

15   witnesses by providing specific "reasons that are germane to each witness."

16   *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); accord *Lewis v. Apfel*, 236

17   F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is

18   competent evidence that an ALJ must take into account, unless he or she expressly

19   determines to disregard such testimony and gives reasons germane to each witness

20   for doing so.").  A lay witness is "not disqualified from rendering an opinion" on

21   how a plaintiff's condition affects his or her ability to work simply because that

22   witness is not a vocational or medical expert.  *Bruce v. Astrue*, 557 F.3d 1113,

23   1116 (9th Cir. 2009).

24        Plaintiff's sister completed a third party function report on August 25, 2017.

25   AR at 219-25.  Ms. Hernandez indicated that plaintiff's paranoia and anxiety "are

26   too overwhelming for him to have social interactions with people and at places

27   outside of the home."  AR at 219.  She reported plaintiff at times sleeps for many

28

hours and at other times does not sleep for days, and always wears headphones listening to music, "even to sleep."  AR at 220-23.  Regarding the ability to leave the home, Ms. Hernandez noted plaintiff requires a companion because he "is not comfortable stepping out alone."  AR at 222.  Ms. Hernandez also noted plaintiff is able to dress himself but does not consistently upkeep his personal hygiene without reminders.  AR at 220.  According to Ms. Hernandez, plaintiff used go out "shopping with friends and left the house daily," but he now "does not go outside except to doctors appointments."  AR at 220, 222.  Plaintiff cares for his fish with the assistance of his mother, and waters the plants, sweeps, and washes dishes when asked.  AR at 220-21.  Additionally, plaintiff is afraid to speak or approach people, has difficulty listening to others because of his anxiety, and his ability to follow instructions is dependent upon his level of anxiety and mood.  AR at 224.  Ms. Hernandez also noted plaintiff can drive "but [is] fearful of police."  AR at 225.

The ALJ provided two reasons for discounting Ms. Hernandez's statements: (1) she was not a medical expert and her statements are less persuasive than the opinions of medical experts; and (2) her statements were not fully supported by the evidence in the record.  AR at 26.

The Regulations specifically instruct all ALJs to consider testimony from "non-medical sources" who have an opportunity to observe the claimant.  See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  The ALJ discounted the statements because Ms. Hernandez was not a medical expert.  *Id.*  But Ms. Hernandez did not need to be an expert to render an opinion as to how her brother's conditions affected his ability to perform basic work activities.  *See Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009) (finding plaintiff's wife was not disqualified from rendering an opinion although she was not a vocational expert).  "Friends and family members [are] in a position to observe a claimant's symptoms and daily activities

are competent to testify as to his or her condition." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (a personal relationship with the claimant is not a valid reason to discount the witnesses observations); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members").  As such this was not a valid reason for discounting Ms. Hernandez's statements.

The ALJ's second reason for discounting Ms. Hernandez's statements was that they were "not fully supported by the evidence of record, which documents greater medical functioning."  AR at 26.  An ALJ may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is simply *unsupported* by medical evidence.  *Compare Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984), *with Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (a lack of support from the medical evidence is not a proper basis for disregarding lay observations); *Bruce*, 577 F.3d at 1116 (same).  It is unclear which the ALJ was saying here.  The ALJ said Ms. Hernandez's statements were not supported by the evidence, but also that the record documents greater functioning, which indicates a finding of a conflict.  And indeed, as discussed, the ALJ detailed the evidence that conflicts with Ms. Hernandez's statements, which substantially track those of plaintiff.

Even assuming the ALJ improperly discounted Ms. Hernandez's statements, where third party testimony "does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by

16

1  the ALJ in discounting the lay witness testimony is harmless. *Molina v. Astrue*,

2  674 F.3d 1115, 1117 (9th Cir. 2012).  That is the case here, where plaintiff's

3  sister's did not describe any additional limitations plaintiff may suffer.

4  Accordingly, any error in discounting the lay witness statements was harmless

5  because the ALJ articulated well-supported reasons for discounting plaintiff's own

6  symptom testimony.

7  **C.    The ALJ's RFC Determination Was Supported by Substantial Evidence**

8         Plaintiff argues the ALJ erred in assessing his RFC.  P. Mem. at 34-37.

9  First, he contends the ALJ failed to properly consider plaintiff's symptom

10 testimony and his sister's similar statements about plaintiff's symptoms in

11 determining plaintiff's RFC, given the ALJ's discounting of that testimony.  As

12 discussed in detail above, the ALJ properly considered plaintiff's testimony in

13 formulating the RFC, and therefore this argument is unpersuasive.  Second,

14 plaintiff argues the ALJ failed to consider substantial other evidence in making his

15 RFC determination.  Plaintiff particularly contends the RFC does not sufficiently

16 reflect plaintiff's limited ability to interact with others, and does not address his

17 limited education and special education.

18        RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

19 §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ reaches an RFC determination by

20 reviewing and considering all of the relevant evidence, including non-severe

21 impairments.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Among the evidence an

22 ALJ relies on in an RFC assessment is medical evidence and opinions.  20 C.F.R.

23 § 404.1545(a)(3).  An ALJ will consider the persuasiveness of the medical

24 opinions and findings based on five factors: (1) supportability; (2) consistency; (3)

25 relationship with the claimant; (4) specialization; and (5) other factors that tend to

26 support or contradict the medical opinion.  20 C.F.R. § 404.1520c(b)-(c); *see*

27 *Sylvester G. v. Saul*, 2021 WL 2435816, at *2 (C.D. Cal. June 15, 2021).  The most

28

important of these factors are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required to, explain how she or he considered the other three factors.  *Id*.

The ALJ found plaintiff had the following nonexertional limitations: plaintiff can perform tasks of nature that can be learned within a short demonstration period of approximately 30 days, with no more than frequent changes to the daily workplace tasks and duties; he can work primarily with things, rather than with people, such that the workplace contact with others is only on an occasional basis; and he can maintain concentration, pace, and persistence for two hours at a time before taking regularly scheduled breaks, and returning to work throughout the workday.  AR at 20-21.

Plaintiff argues the ALJ failed to address his limited education and special education by limiting the math or reading level required of any jobs, but does not further explain what he means by this.  P. Mem. at 36.  The RFC formulated by the ALJ limits plaintiff to tasks that can be learned within a short demonstration period of approximately 30 days.  AR at 20.  Plaintiff does not explain how this is inadequate in light of plaintiff's education, nor does he cite any authority that would require the ALJ to set math or reading level limitations here.  Accordingly, with this argument plaintiff fails to demonstrate the ALJ erred in his RFC determination.  *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (where argument is "difficult to decipher" and unsupported by authority, court "will not manufacture arguments for an appellant").

As for plaintiff's argument with respect to his ability to interact with others, there was substantial evidence to support ALJ's determination that plaintiff could have occasional workplace contact with others.  In reaching the RFC determination, the ALJ found the opinion of State agency medical expert Dr. Franco to be persuasive, and the opinion of independent consultative examiner Dr.

1  Bridges less persuasive. AR at 25. Dr. Franco concluded that plaintiff was not
2  significantly limited in his ability to carry out short and simple instructions,
3  perform activities within a schedule, sustain an ordinary routine, make simple
4  work-related decisions, and complete a normal workday without interruptions from
5  psychologically based symptoms and to perform at a consistent pace without an
6  unreasonable number of rest periods. AR at 83. The doctor found plaintiff was
7  moderately limited in his ability to carry out detailed instructions, maintain
8  attention for extended periods, and work in coordination or in proximity with
9  others. AR at 83. With respect to plaintiff's social integration limitations, Dr.
10  Franco concluded that plaintiff was not significantly limited in his ability to ask
11  simple questions or for assistance, accept instructions and respond appropriately to
12  criticism from supervisors, and maintain socially appropriate behavior. AR at 84.
13  Dr. Franco found moderate limitations in plaintiff's ability to interact with the
14  general public and get along with coworkers or peers. *Id.*

15      The ALJ found Dr. Franco's opinion was supported by an accompanying
16  discussion of the evidence, consistent with the evidence of record documenting
17  issues with perception, mood, and anxiety, but indicating that the claimant largely
18  presented as alert and cooperative with grossly intact thought processes, adequate
19  focus and memory, denied ideation, and was typically free of active hallucinations.
20  AR at 25 (citing AR at 346, 348, 350, 354-56, 373, 385, 388, 395, 404, 408, 410,
21  416-18, 420-21, 433-36). Dr. Franco's opinion was also consistent with plaintiff's
22  activities of daily living, such as his ability to play video games for extended
23  periods, watch television and YouTube, complete crossword puzzles, and attend to
24  his personal care and perform basic household chores. AR at 47-48, 57-58.
25  Consistent with Dr. Franco's finding that plaintiff was moderately limited in his
26  ability to interact with the public and get along with coworkers, the ALJ limited
27  plaintiff to only occasional contact with others, but did not prohibit all public
28

contact given plaintiff's activities in the community including shopping and buying fast food by himself.  AR at 25, 84, 366.

Additionally, the ALJ considered the opinion of Dr. Bridges, but found it less persuasive than Dr. Franco's assessment.  AR at 25.  Dr. Bridges performed a psychiatric evaluation of plaintiff and concluded that he had no limitation performing simple and repetitive tasks or detailed and complex tasks, and no difficulty performing work activity in a consistent basis without special or additional supervision.  AR at 369.  Further, plaintiff had no limitation completing a normal workday or workweek, or accepting instructions from supervisors, interacting with coworkers and the public, and no difficulty handling the usual stresses, changes, and demands of gainful employment.  *Id*.  Although Dr. Bridges was as able to review some of the plaintiff's treatment notes, the ALJ discounted her opinion because "she did not have the opportunity to review the bulk of the record to contextualize her findings, and had to rely heavily on her observations of [plaintiff's] behavior and functioning during her October 2017 evaluation."  AR at 26.

The ALJ properly evaluated the medical evidence under the regulations. The ALJ considered all of the medical evidence and opinions, and based his assessment on the five factors listed in the regulations.  The ALJ properly explained how he found Dr. Franco's opinion to be more persuasive than Dr. Bridges', noting that Dr. Franco provided evidentiary support for her opinions consistent with the medical record, and Dr. Bridges did not have an opportunity to review the entire record.  The RFC determination was therefore supported by a proper evaluation of medical opinions, including with respect to plaintiff's ability to interact with others.

Plaintiff nonetheless argues the ALJ's limitation to occasional workplace contact with others failed to account for all of plaintiff's limitations in interacting

1  with people, including a claimed inability to interact with a supervisor when

2  necessary.  P. Mem. at 36-37.  But nothing in the record warrants a conclusion that

3  plaintiff completely lacked any faculties to interact with a supervisor, and plaintiff

4  cites nothing apart from plaintiff's own testimony that was properly discounted.

5  Consistent wit Dr. Franco's opinion, the ALJ found plaintiff to have no more than

6  a moderate limitation in interacting with others.  AR at 19.  The ALJ reasoned that

7  although plaintiff experienced paranoia and preferred to be alone, records showed

8  he was usually cooperative.  AR at 24, 433.  He was able to help with chores, and

9  lived with multiple family members without noted conflict.  AR at 404, 406.  The

10  ALJ noted plaintiff went out into the community independently to run errands, go

11  shopping, buy fast food, drive, and attend medical appointments. AR at 24, 366.

12  Accordingly, the ALJ incorporated these limitation in plaintiff's RFC, namely, that

13  "he can work primarily with things, rather than with people, such that the

14  workplace contact with others is only on an occasional basis."  AR at 20.  This

15  determination was supported by substantial evidence.

16       As such, the ALJ did not err in his RFC determination.

17  **D.    <u>The ALJ Did Not Err at Step Five</u>**

18       Plaintiff's final argument is that the ALJ erred at step five in relying on the

19  testimony of the vocational expert ("VE").  P. Mem. at 37.  Plaintiff argues the

20  hypothetical question posed to the VE did not encompass or reflect all of plaintiff's

21  limitations.

22       At step five, the burden shifts to the Commissioner to show that the claimant

23  retains the ability to perform other gainful activity.  *Lounsbury v. Barnhart*, 468

24  F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not

25  disabled at step five, the Commissioner must provide evidence demonstrating that

26  other work exists in significant numbers in the national economy that the claimant

27  can perform, given his or her age, education, work experience, and RFC.  20

28

C.F.R. § 404.1512(b)(3).  The Commissioner may satisfy this burden through the testimony of a VE.  *Lounsbury*, 468 F.3d at 1114.  "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional authority).

In line with the RFC determination that plaintiff is limited to occasional workplace contact with others, the first hypothetical the ALJ posed to the VE limited contact with others on an occasional basis, as well as the other limitations the ALJ ultimately included in his RFC assessment.  AR at 65.  The VE testified that an individual with these limitations could not perform plaintiff's past work as a janitor, but could perform other work for which there are jobs in significant numbers in the national economy, including cleaner II, industrial cleaner, and housekeeper/laundry aide.  AR at 65-66.

Plaintiff argues the ALJ should not have relied on this testimony, but this argument is based on plaintiff's disagreement with the RFC determination.  As discussed above, the RFC assessment is supported by substantial evidence.  As such, the ALJ did not err at step five.

//

//

## V.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 30, 2023                           _____
                                                        SHERI PYM
                                                        United States Magistrate Judge